AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

V.

DIEGO FERNANDO LENIS
ROBERTO JAIRO JURADO-VELEZ

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 08-6242-BSS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 21, 2008__ in __Broward__ county, in the __Southern__ District of __Florida__ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally combine, conspire, confederate, and agree with each other to possess with the intent to distribute one or more kilograms of heroin;

in violation of Title __21__ United States Code, Section(s) __841(a)(1); 846__

I further state that I am a(n) __Special Agent, DEA__ and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☑ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

JUNE 23, 2008                                                           at   FORT LAUDERDALE, FLORIDA
Date                                                                                    City and State

BARRY S. SELTZER, U.S. MAGISTRATE JUDGE       _____
Name & Title of Judicial Officer                                       Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Shad Aschleman, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Miami Field Division. I have been a Special Agent for approximately four years. During that time I have focused on investigations involving narcotics trafficking and money laundering. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA. I have conducted investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2. This affidavit is based upon information obtained by my own investigation as well as information provided by other law enforcement officers. This affidavit is submitted for the sole purpose of supplying probable cause for the arrest of Diego Fernando LENIS and Roberto Jairo JURADO-Velez (hereinafter referred to as "LENIS" and "JURADO," respectively) for conspiracy to possess with the intent to distribute one or more kilograms of heroin. As such, this affidavit does not contain all the facts known to me regarding this investigation.

3. On or about June 21, 2008, based upon information provided to the agents by Confidential Sources (hereinafter "CS)), at approximately 11:25 a.m., Miami Field Division (MFD) agents of the DEA established surveillance at 5943 NW 57th Court, Apartment #C-109, Tamarac, Florida, where LENIS, a suspected drug trafficker, resided. The CS had previously made arrangements to purchase three kilograms of heroin from

LENIS. The agents had previously identified LENIS as the owner of a silver Dodge Durango sport utility vehicle.

4. At approximately 12:40 p.m., agents conducting surveillance at LENIS' apartment complex observed a blue Ford Explorer arrive at the residence. The driver (later identified as JURADO) met with LENIS. At 12:43 p.m., agents conducting surveillance at the apartment complex observed LENIS and JURADO remove four motorcycle tire rims from the Explorer and take the rims to LENIS' apartment. At approximately 12:50 p.m., agents conducting surveillance observed LENIS and JURADO return to the Explorer and remove two motorcycle forks and a plastic shopping bag from the vehicle. These items were also taken to LENIS' apartment.

5. At approximately 2:02 p.m., agents conducting surveillance at LENIS' apartment observed LENIS and JURADO depart LENIS' apartment with the four motorcycle tire rims and the two motorcycle forks. Agents observed LENIS and JURADO place these items back in the Explorer. LENIS and JURADO returned to LENIS' apartment. At approximately 2:10 p.m., agents conducting surveillance at LENIS' apartment observed JURADO leaving LENIS' apartment and depart the apartment complex in the Explorer.

6. At approximately 4:20 p.m., agents conducting surveillance at LENIS' apartment observed CS arrive at LENIS' apartment complex, as had been previously arranged. At approximately 4:21 p.m., agents conducting surveillance observed LENIS and the CS walk to the rear of LENIS' Durango, where it appeared as if LENIS was showing CS something.

7. At approximately 4:24 p.m., agents observed LENIS, accompanied by his wife, enter his vehicle and depart his apartment complex. Agents followed his vehicle. LENIS drove westbound on Commercial Boulevard and then southbound on Pine Island Road. At approximately 4:34 p.m., officers observed LENIS fail to use a signal before changing traffic lanes and with the assistance of two marked units from the Sunrise Police Department, a traffic stop was conducted. An officer from the Sunrise Police Department and his K-9, "Amigo," conducted a search of the exterior perimeter of the vehicle. During the search, "Amigo" notified the police of the presence of an odor of narcotics near the rear of the vehicle.

8. A subsequent search of the rear of the vehicle located an undetermined amount of suspected narcotics in a detergent box. When the drugs were recovered during the search, LENIS spontaneously told the police that "some guy paid [him] $2,000 dollars to transport" the drugs. LENIS was then advised that he was being placed under arrest for possession of narcotics.

9. LENIS was transported to a predetermined location where he was interviewed by Sunrise Police Detectives, DEA Agents, and other task force members. LENIS was advised of his Constitutional Rights in English. LENIS stated that he understood his rights and that he would voluntarily provide the agents with a statement without an attorney present. LENIS acknowledged that it was drugs in the rear of the vehicle and that he had received the drugs from "Alberto" (later identified as JURADO) earlier in the day. LENIS told the agents that "Alberto" delivered the drugs in a Ford Explorer. He further stated that he was to be paid $2,000.00 USD to deliver the drugs to

another person. After being asked the weight and type of narcotics, LENIS invoked his right to counsel.

10. After invoking his right to counsel, LENIS continued to provide a statement to the agents. LENIS was interrupted and advised that since he had invoked his right to counsel, there would be no further questioning of him. LENIS then told the agents that he wanted to continue to cooperate. LENIS was read his rights again, this time in Spanish. LENIS indicated he understood his rights and he voluntarily signed a waiver of his rights. LENIS then provided the agents a written statement that he voluntarily and by his own free will changed his mind and that he would answer the agents questions without the presence of an attorney. LENIS then told the agents that he had possessed the heroin with the intent to distribute and that the drugs were delivered to his apartment earlier in the day in motorcycle parts by a man he knew as "Alberto," but who was later identified as JUARADO.

11. Based upon the statements of LENIS, at approximately 5:00 p.m., the agents re-established surveillance at LENIS' residence. At approximately 6:15 p.m., at the direction of the agents, LENIS contacted JURADO. JURADO agreed to return to the apartment complex to meet with LENIS. At approximately 6:30 p.m., the agents observed JURADO arrive at LENIS' apartment complex in the same blue Ford Explorer he was observed driving earlier in the day. The agents then approached JURADO and asked him to step out of the vehicle. JUARADO was then advised of his Constitutional Rights in Spanish. JURADO stated that he understood his rights. He then voluntarily provided the agents with a statement and admitted to delivering the heroin to LENIS' residence earlier in the day. He told the agents that he was to be paid $15,000.00 USD to

smuggle narcotics into south Florida from Venezuela, which were concealed in motorcycle parts. The agents then advised JURADO that he was under arrest.

12.     Subsequent to his arrest, the agents searched JURADO's vehicle and discovered four metal tire rims and two motorcycle forks amongst other motorcycle parts. JURADO told the agents that the motorcycle parts found in the rear of his vehicle were the same ones he had used to transport the undetermined amount of narcotics to LENIS at his residence. He also told the agents that the narcotics were removed from the motorcycle parts while inside LENIS' apartment earlier in the day.

13.     The recovered narcotics were field-tested. They tested positive as heroine. It was subsequently determined that the heroin recovered from LENIS' vehicle weighed approximately 2,634.50 grams.

14.     Based upon the foregoing information, your affiant asserts that probable cause exists to believe that DIEGO FERNANDO LENIS and ROBERTO JAIRO JURADO-VELEZ conspired with one another to possess with intent to distribute one or more kilograms of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

AFFIANT FURTHER SAYETH NAUGHT

SHAD ASCHLEMAN
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Subscribed to and sworn before me this 23rd day of June, 2008.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

5