UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60177-CR-COHN(s)


UNITED STATES OF AMERICA


v.


DIEGO LENIS,

Defendant.

_____/

## FACTUAL PROFFER IN SUPPORT OF PLEA

The United States of America and Defendant Diego Lenis agree that, if this case proceeded

to trial, the government would establish the following facts beyond a reasonable doubt:

From in or about February 2001, through June of 2004, Diego Lenis imported and conspired

to import kilogram quantities of heroin from Colombia into the United States for distribution in

Chicago, Illinois. Diego Lenis conspired with a Colombian heroin supplier who would transport the

heroin to Mexico, where it would be diverted onto cruise shops bound for the United States. Once

the heroin arrived in the United States, Diego Lenis would direct couriers to meet with certain

crewmembers at or near ports in Key West, Miami, Fort Lauderdale, and New Orleans, Louisiana,

where the cruise line crewmembers delivered kilogram quantities of heroin to Lenis's couriers,

usually in 1 to 2 kilogram quantities. On several occasions, Lenis's couriers paid the cruise line

crewmembers for their role in transporting the heroin into the United States. Lenis's couriers paid

the cruise line crewmembers roughly two to three thousand dollars per kilogram of heroin using

money provided to them by Diego Lenis.

Once Lenis's couriers received the heroin, they transported it by car to Chicago, where Lenis' co-conspirators received and distributed the heroin for sale. After delivering the heroin, the couriers would normally receive large sums of cash ranging between forty and sixty thousand dollars, which represented proceeds from the sale of heroin previously delivered to and distributed in Chicago by couriers working for Diego Lenis. As instructed by Diego Lenis, the couriers would conceal the money in their vehicles, and transport the money to him in Broward County, where he then resided. These narcotics proceeds were transported in this manner, as opposed to being wired, or deposited into a bank account, in order to conceal the nature, source, and ownership of the money. Once Diego Lenis received the proceeds delivered by the couriers, he would use the money to pay off his supplier, the couriers, and the cruise line crewmembers who imported the heroin in order to keep the cycle of importation and distribution going. Diego Lenis continued to import heroin from Colombia through this and other means for distribution in Chicago through the summer of 2004. During this time period, Lenis and the other members of his organization imported and distributed at least 10 kilograms, but less than 30 kilograms of heroin. And, during this time period, Lenis conspired to transport at least $400,000, but less than $1,000,000 for the purpose of concealing the nature, source, control, and ownership of the heroin proceeds, and in order to promote the narcotics importation and distribution conspiracy.

On June 21, 2008, Diego Lenis was arrested while in possession of 2½ kilograms of cocaine heroine, which he received that same day from co-defendant Roberto Jairo Jurado Velez in Tamarac, Florida. After his arrest, Lenis spontaneously stated that he had been offered $2,000 to transport the heroin. After being advised of his *Miranda* rights, Lenis admitted that he received the heroin from co-defendant Jurado. Lenis also admitted that he had previously worked in the Chicago area laundering drug money for another individual. The total amount of heroin that Lenis imported and distributed,

including the amount he possessed on June 21, 2008, is at least 10 kilograms, but less than 30 kilograms of heroin.

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

Date: 9/10/08

By: _____
ALEJANDRO O. SOTO
ASSISTANT UNITED STATES ATTORNEY

Date: 10 Sept 08

By: _____
JORGE SIBILA, ESQ.
ATTORNEY FOR DEFENDANT
DIEGO LENIS

Date: 10 Sept 08

By: _____
DIEGO LENIS
DEFENDANT